## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WILLIAM E. MCCARTNEY                    :

    Petitioner                                       :

    v.                                                    :     CIVIL ACTION NO. JFM-06-368

KATHLEEN GREEN                              :
   and
THE ATTORNEY GENERAL OF THE        :
STATE OF MARYLAND

                                          :

    Respondents

ooooOoooo

## MEMORANDUM

Pending is a 28 U.S.C. §2254 motion for habeas corpus relief with exhibits filed by counsel on behalf of William E. McCartney, challenging his April 1, 2003, *Alford* [1] plea to second degree murder in the Circuit Court for Baltimore County. Counsel for respondents, Kathleen Green, Warden of the Eastern Correctional Institution, and J. Joseph Curran, Jr., Attorney General of the State of Maryland, has filed an answer in opposition with exhibits to which petitioner has filed a reply.

Upon careful review of the pleadings, transcripts, and applicable law, the court determines that an evidentiary hearing is not necessary. *See* 28 U.S.C. 2254(e)(2); Rule 8(a), "Rules Governing Section 2254 Cases in the United States District Courts." For the reasons that follow, the motion is denied and dismissed.

---

[1]    *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) .

**I.  Background**

The following facts were presented by the State, and are summarized from the transcript of

the plea hearing.[2]   On April 1, 2003, McCartney entered an *Alford* plea to the December 2, 2001,

murder of his friend and neighbor, Albert Kirt.   Plea Transcript, Plaintiff's Exhibit 1 at 7.   Mr.

Kirt's body was discovered on December 4, 2001.   *See id.*   Initial investigation by Baltimore

County Police revealed that the victim died of multiple stab wounds and there were no signs of

forced entry into the victim's residence in a trailer park.   *See id.*   Investigators also learned that

McCartney had in his possession between December 2, and 4, 2001, property belonging to  Mr.

Kirk, including credit cards. *See id.* at 10-12.   Investigators identified McCartney as the person who

used the victim's credit cards at numerous retail locations between December 2 and 4, 2001.[3] *See*

*id.*  When police confronted McCartney at a shopping mall, he fled and discarded an object, which

the police retrieved and identified as the victim's wallet. *See id.* at 11, 16-17.

At the time of the offense, McCartney was friendly with Tammy Dick, her brother James

Dick, Lisa Tusig, and Allen Knapp, all of whom had criminal associations and used cocaine and

heroin.   *See id.* at 13-14.   Initially, James Dick and Lisa Tusing were also charged with McCartney

in the murder.   Later, the charges against James Dick and Lisa Tusing were dismissed.   *See id.*

Tammy Dick told police that on December 2, 2001, McCartney picked her up at her home.

She said that McCartney had some else's credit cards and they used them to make various purchases.

*Id.* at 13.   Tammy Dick testified that McCartney told her the owner of the credit cards "cannot see."

---

[2]        At the hearing, defense counsel did not offer any additions, corrections, or
deletions to the facts adduced by the State. Plea Transcript, Pet. Ex. 1 at  20.

[3]        The State noted at sentencing that McCartney had charged more than $20,000 to
the victim's credit cards. Sentencing Transcript, Resp. Ex. 2 at 10-11.

2

*See id.*  She also said that  McCartney told her he had hit the owner of the credit cards with a pickax. *See id.*

Alan Knapp told police that on December 2, 2001, McCartney had in his possession the victim's social security check and credit cards. *See id.* at 14.  Knapp indicated that when he asked McCartney whether he was concerned about getting caught using someone else's credit cards, McCartney said, "Nobody will report these cards as stolen. We will not get caught." *Id.*  Tammy Dick, James Dick, and Lisa Tusing all told police that McCartney was very agitated on December 2, 2001, and threatened to kill himself. *See id.* at 14-15.  Alan Knapp and Tammy Dick told police they saw McCartney burn the victim's social security check. *Id.* at 18.

After his arrest, McCartney admitted using the victim's credit cards, but denied committing the murder. *Id.* at 15-16.  A fellow inmate at the Baltimore County Detention Center told police that McCarthy told him that  he had killed Mr. Kirk "to rob him and take his wallet and check" and that he had  used a knife, not a pickax to kill the victim. *Id.* at 18-19.

At the plea  hearing, the trial court found the facts presented by the state supported the guilty plea. *See id.* at 20.  The court concluded the plea was entered voluntarily and intelligently. *See id.* The plea agreement provided for a sentence no greater than thirty years in prison, but allowed McCartney to argue for a lesser sentence. *See id.* at 2.  Pursuant to the plea agreement, the remaining charges against McCartney were *nol prossed*. *See id.* at 2, *see also* Resp. Ex. 1.  On September 4, 2003, the Circuit Court for Baltimore County held a sentencing hearing, and imposed a term of thirty years imprisonment. Resp. Ex. 1-2.  McCartney did not file for leave to appeal his conviction and

sentence. Resp. Ex. 1; Petition at 2. [4]

On July 19, 2004, McCartney filed a pro se petition for state post-conviction relief.  The petition was supplanted by amended petition filed by counsel on McCartney's behalf on February 8, 2005.  Pet. Ex. 2.  In the amended petition, McCartney presented two questions:

I.      While it is fundamental that a defendant in criminal proceedings is entitled to the effective assistance of counsel, the question in this case is whether that assistance requires counsel be truthful and honest in advising the client regarding the plea.

II.     Did Petitioner voluntarily and knowingly plead guilty to the offense imposed?

*Id*. at 2; Post-Conviction Transcript at 2.  In the amended petition, McCartney faulted trial counsel, Assistant Public Defender Jennifer Aist, for providing ineffective assistance by: 1) failing to adequately investigate whether James and Tammy Dicks had committed the murder; 2) failing to investigate or challenge "the integrity of the investigation and the credibility of the State's Homicide Detectives"; 3) influencing him to enter a guilty plea by misrepresenting her conversation with his sister Dorothea Reilly; and 4) advising him that by pleading guilty he might receive a twenty-year sentence, whereas, by going to trial, he risked a life sentence plus forty-five years.  *See id.*

On February 8, 2005, the Circuit Court for Baltimore County conducted a post conviction hearing.  At the conclusion, the court ruled from the bench, and denied relief.  Pet. Ex. 3 at 116-26; *see also* Resp. Ex. 1 at 7-8.

McCartney, by his counsel, filed an application for leave to appeal the post-conviction court's decision, initially raising six issues.   Pet. Ex. 4.  McCartney's attorney later filed a

---

[4]      During pre-trial proceedings and at the plea hearing, Jennifer Aist, Esq. represented McCartney.  David P. Henninger, Esq. represented McCartney at sentencing and during his state post-conviction proceedings.

supplement to the application for leave to appeal which reduced the number of issues presented to

three.  The issues presented were:

> 1)    Did the post-conviction court err in finding that Mr. McCartney's
>        guilty plea was knowing, intelligent, and voluntary?
>
> 2)    Did the post-conviction court err in determining that the decision
>        to accept the guilty plea was a matter of trial strategy? and
>
> 3)    Did the post-conviction court err in making credibility
>        determinations based on information outside the record in this
>        case?

Pet. Ex. 4 & 5 at 4.  The Court of Special Appeals of Maryland summarily denied the application

for leave to appeal by unreported opinion filed on August 16, 2005, and the mandate issued on

November 30, 2005.  Pet. Ex.  6 & 9.  The intermediate appellate court denied McCartney's motion

for reconsideration on  November 30, 2005.  Pet. Ex. 9.   McCartney filed the instant 28 U.S.C.

§ 2254 motion for federal collateral relief on February 13, 2006.

## II.  Claims Presented

McCartney raises the following claims in his petition for federal habeas corpus relief:

1)  the state court record fails to show the guilty plea was entered into knowing, intelligently, and

voluntarily; and 2) trial counsel was ineffective for advising him to enter an *Alford* plea to second

degree murder. Petition at 4.

## III.  Procedural Default

Before a petitioner may seek habeas relief in federal court, he must exhaust each claim

presented to the federal court by pursuing remedies available in state court.  *See* 28 U.S.C. § 2254(b)

and (c);  *see also Rose v. Lundy*, 455 U. S. 509, 521 (1982).  This exhaustion requirement is satisfied

by seeking review of the claim in the highest state court with jurisdiction to consider the claim.  *See*

*O'Sullivan v. Boerckel,* 526 U. S. 838 (1999).  In Maryland, this may be accomplished by raising certain claims on direct appeal and with other claims by way of  post-conviction proceedings. Exhaustion is not required if at the time a federal habeas corpus petition is filed, the petitioner has no available state remedy. *See Teague v. Lane*, 489 U. S. 288, 297-98 (1989).

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (failure to note timely appeal); *Murray v. Carrier*, 477 U. S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post- conviction relief).  The procedural default doctrine bars consideration of a claim in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. *See Murray*, 477 U. S. at 495; *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977).  Even where a petitioner fails to show cause and prejudice for a procedural default a court must still

consider whether it should reach the merits of the petitioner's claims in order to prevent a fundamental miscarriage of justice.  *See  Schlup v. Delo*, 513 U. S.298, 314 (1995).   The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray*,  477 U. S. at 496.

## IV. Standard of Review

This  petition is subject to the provisions of the federal habeas statute, 28 U.S.C. § 2254, as amended, which provides a "highly deferential standard for evaluating state-court rulings." *Lindh*

*v. Murphy*, 521 U.S. 320, 333 n.7. (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005) (stating habeas court's standard for evaluating state-court ruling is highly deferential).  A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or  2)  "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

In *Williams v. Taylor,* 529 U.S. 362 (2000), the Court explained that  a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-413.  A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court  identifies the correct  governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410. Furthermore, when a state court has made a  finding of fact, it is presumed to be correct and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## VI.  Analysis

### A.   Whether the State Court Record Fails to Show the *Alford* Plea was Entered Knowing, Intelligently, and Voluntarily

McCartney's first claim is that the plea was not entered knowingly, intelligently, and voluntarily because during the plea colloquy the court failed to: 1) inform him that he could choose a bench trial if he pleaded not guilty and would have to be found guilty beyond a reasonable doubt;* and 2) ascertain whether the plea was entered with his knowledge of the nature of the offense of second degree murder.  McCartney asserts:

> First, although the court explained the jury trial right to Mr. McCartney, it did not inform him that he could elect a bench trial if he pleaded not guilty. (Guilty plea T-3-4).  Thus, Mr. McCartney was not made aware of the fact that he could be tried by the court and that the judge would have to find him guilty beyond a reasonable doubt. This constituted reversible error under *Boykin v. Alabama*, 395 U.S. 238 (1968).

> Second, the record shows that the guilty plea was not entered with Mr. McCartney's knowledge of the nature of the offense of second degree murder.  Thus, the plea record is invalid under *Henderson v. Morgan*.  The only inquiry made of Mr. McCartney was whether he understood "all elements of the crime of murder in the second degree." (Guilty Plea T-7).  Mr. McCartney answered in the affirmative, but there was no on-the-record explanation of the elements of the offense.  Because the court did not give on-the-record advice as to the elements of the offense, the plea was neither voluntary nor intelligent.

Pet. Memorandum at 10-11.

Respondents raise the affirmative defense of procedural default in response to these claims.  Response at 14.   Respondents accurately note that nowhere in the post-conviction petition nor during the post-conviction hearing did McCartney attack his plea on the grounds now raised  relief, *i.e.* that he was not informed that he could be tried at a bench trial and found guilty beyond a reasonable doubt or that the plea was not entered with his knowledge of the nature of second degree murder. *See id.*  Respondents aver that the sole  issue presented on state collateral review was

8

whether the plea was defective because defense counsel Jennifer Aist allegedly made misrepresentations to induce her client to enter a plea. *See id.* In support, Respondents point to statements made by McCartney's counsel. The post-conviction hearing transcript shows that the State sought clarification of the petition, as amended, at the start of the hearing:

> MR. KROLL: My question to Mr. Henninger is, with effective assistance of counsel, I just want to be sure of the issues so the court knows and the States knows, in light of this amended petition are we solely talking about the conversation between Miss Aist, at that time defense counsel, and the defendant at the time the plea was entered into trial, is that what we are just focused on?

> MR. HENNINGER: The answer to that is, yes, that is probably pretty accurate. Judge, can I just lay out, I guess, where I am on this so we can be clear?

Post Conviction Transcript, Resp. Ex. 3 at 2-3.   Petitioner's counsel then discussed his client's belief that James Dick and Lisa Tusing committed the murder. *See id.* at 4. Counsel added that James Dick had been charged in a another murder by stabbing. *See id.*   McCartney wanted a trial because he thought given their criminal records and the other facts in the case that it would be a very triable case.  Petitioner's counsel continued:

> [McCartney] discussed it with his sister, Miss Reilly, who is here in court.  The joint discussion was he would have a trial, not plead guilty. And the night before they talked with the Public Defender, and that is the deal, they were going to trial.  The next morning the public defender allegedly tells Miss Reilly to leave the courtroom, because she wanted her client Mr. McCartney to pled guilty.  And he did not want to do that.  The bottom line is Mr. McCartney says, I need to know what my sister wants.  Allegedly, Miss Aist comes out in the hallway, comes back and tells my client, she wants you to plead guilty.  Well, your honor, that's not what she said. She said to Miss Aist, I want him to plead not guilty, he wants to go to trial.  Based upon representations that the sister said, go ahead and take the plea, he agrees to take the plea.

*See id.* at 4-5.

In regard to the claim that the plea was not voluntarily and knowingly entered, the State

objected because the issue had never been presented on appeal:

> MR. KROLL:  Now, as to the second question, in Mr. Henninger's petition, did petitioner voluntarily, knowingly, plead guilty to the offense imposed.  That is an appeal matter.  That's not subject to post conviction.  And that's the subject for an appeal.  And there was no file, nothing filed by the defendant to appeal that, which he could have done and never asked anyone to do.

> THE COURT: Never appealed his conviction?

> MR. KROLL: And that is where all this belongs, not in post conviction court, and it's just a throw it up there and hope, and there is no hope.  Thank you, Your Honor.

> MR. HENNINGER:  Did not, Your Honor.

*See id* at 9-10.   Later, the post-conviction court determined:

> With regard to the first question presented in the amended petition for post conviction relief, posing the question whether the assistance of effective counsel requires counsel to be truthful and  honest in advising the client regarding the plea,, that question as well as the question with regard to the voluntariness of the plea seems to me should have been raised on appeal, but no appeal was taken, Even if it's determined that they were not questions for the Appellate Court, this court finds that indeed Mr. McCartney was entitled to effective assistance of counsel by the Sixth and Fourteenth Amendments to the United States.

McCartney, by his counsel, counters that  the doctrine of procedural default is inapplicable,

analogizing the facts here to those in *Harris v. Reed*, 489 U.S. 255, 266 1989).  In *Reid:*

> ...the Illinois state court noted that the habeas petitioner's claims 'could have been raised [on] direct appeal' 489 U.S. at 266. Yet the state court went on to reach the merits or the claims and under those circumstances, the Supreme Court concluded that the Illinois Court 'did not "clearly and expressly"' rely on waiver as a ground for rejecting any aspect of petitioner's ineffective- assistance-of-counsel claim.

Pet. Reply at 4.

The facts *sub judice* are readily distinguishable from those presented in *Reid*.  In the instant

case, the state post-conviction court never reached the merits of the claims presented on federal

habeas corpus review, because they were never previously raised in the state courts.  When the state post-conviction court ruled on the validity of the McCartney's plea, it did so in the context of determining whether the plea was entered voluntarily and knowingly in light of allegations that counsel misrepresented facts to McCartney to induce entry of a plea.[5]  *See id.* at 111-16.   The post-conviction court's reference to in the plea colloquy was clearly made against the background of this substantive ineffective assistance claim, as framed at the onset of the hearing by petitioner's counsel. *See supra* p 11. Efforts to bootstrap claims that the colloquy was procedurally defective are unavailing.

Even if were these new claims not procedurally defaulted, they fail on the merits. To comport with the Fifth Amendment, a defendant's plea of guilty must be voluntary and intelligent. *See Boykin v. Alabama*, 395 U.S. 238 (1969); *see also Hill v. Lockhart*, 474 U.S. 52, 56, (1985) ("[The] long standing test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant .' ") (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A guilty plea may be constitutionally infirm if a defendant failed to understand the constitutional rights he was waiving by pleading guilty or had an incomplete understanding of the charges lodged against him. *See Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976). At a minimum, a plea colloquy should establish that the defendant understood the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offense for which he is charged, and the permissible range of sentences. *See Boykin* 395 U.S. at 245 n. 7.

---

[5]        A compact disc (CD) of the plea hearing and a transcript of those proceedings were entered into evidence and considered by the post-conviction court. Pet. Ex. 3 at 8,10.

The burden is on petitioner to establish that the plea was neither intelligent nor voluntary. *See Hill v. Lockhart*, 474 U.S. at 59; *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297-98 (4th Cir.1992).   A habeas petitioner challenging the voluntary nature of his plea faces the heavy burden of proof by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).   "The representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

At the time of trial, Maryland Rule 4-242(c) provided:

> The trial court may accept a plea of guilty only after it determines, upon examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the Defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with the understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea.

At the plea hearing, the court informed McCartney that the maximum sentence to which he was pleading guilty, specifically second degree murder, was 30 years. Pet. Ex 1, Plea Transcript at 3. The court explained that by entering a plea, McCartney was giving up his right to a jury trial which would have to unanimously find him guilty beyond a reasonable doubt, the right to confront witnesses, the right against self incrimination and technical defenses**.** *See id.* at 4-5.   The court asked McCartney whether anyone had promised him anything other than what had been entered into the record, and whether anyone had threatened, induced or led him to plead guilty.   McCartney replied "No sir" and affirmatively responded that he was entering the plea on his own free will. *See id.* at 5. When the court questioned whether he understood the maximum sentence to which he was pleading guilty to, second degree murder was 30 years, McCartney answered "Yes sir." *See id.* at

3.

As earlier noted, 28 U.S.C. § 2254(d) requires federal district courts to accord great deference to the conclusions reached by state courts.  Mere defects in the plea colloquy are insufficient to establish a due process violation: rather, voluntariness is determined by "considering all of the relevant circumstances surrounding" the plea.  *Brady v. United States* , 397 U.S. 742, 749 (1970). In this case, this court cannot conclude that the state court decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, even if procedural default were  not to apply, the state court ruling survives scrutiny under 28 U.S.C.§ 2254.

### B.  Whether Trial Counsel Rendered Ineffective Assistance in Advising McCartney to Enter the *Alford* Plea

McCartney's second claim is that he was provided constitutionally ineffective assistance of counsel when Jennifer Aist advised him to enter a plea to second degree murder.  Petition. at 16. McCartney, through counsel,  argues that the state post-conviction court applied the wrong legal standard to assess this claim.  First, he claims the post-conviction court incorrectly viewed the decision whether to go to trial or enter a plea to be one of trial strategy.  Petition at 14.  Next, he claims that court erred by making credibility determinations based on information outside the record.

A criminal defendant's right to effective assistance of counsel is protected by the Sixth Amendment to the United States Constitution. Constitutionally ineffective assistance of counsel claims are governed by standards established in  *Strickland v Washington,*  466 U.S. 668 (1984); *see also Bell v. Cone*, 535 U.S. 695, 698-99 (2002) (explaining the interplay between *Strickland* and 28 U.S.C. § 2254(d)).  In *Bell v. Cone*, the Supreme Court explained that in order to successfully bring

an ineffective assistance claim in a § 2254 action a petitioner must:

> ...do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254 (d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. *See Williams, supra*. at 411 65 S. Ct. 363. Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.

535 U.S. at 698-699. To prevail on a claim of ineffective assistance of counsel, a petitioner must show his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See id.* at 687. To demonstrate actual prejudice, a petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. *Strickland* holds there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *See id.* at 688-89. Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697. A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101(1955)).

At the post-conviction hearing, McCartney, Dorothea Reilly, Jerry Lee Buzzard, and Thomas Buzzard testified on behalf of McCartney. McCartney testified that he met with Jennifer Aist just three times before trial. Post Conviction Transcript, Pet. Ex. 3 at 11. He always insisted to Aist that he was innocent and had no intention of pleading guilty. *See id.* at 12, 16. The first time the idea of a plea was presented to him was on the day of trial when Aist told him he could enter an *Alford* plea to second degree murder in exchange for a sentence of thirty years. *See id.* at 17. Aist told him

14

that  he was facing a life term without the possibility of parole. *See id.*   McCartney said  he relied

on the advice of his sister in making decisions, so he asked Aist to speak with his sister. *See id.* at

17-20.  Aist spoke to Dorothea Reilly who was present on the day of trial.  Aist reported back to

McCartney that his sister wanted him to take the plea.  *See id.* at 17.   That evening, Dorothea Reilly

informed him that she had told Aist that he should reject the plea and go to trial. *See id.* at 19-20.

Dorothea Reilly testified that she and Aist discussed by telephone on the night before trial

whether McCartney should go to trial or enter a plea with a thirty-year maximum.  *See id.* at 40.

Reilly said she told Aist that she wanted McCartney to go to trial and not enter a plea.  *See id.* at 41,

44.  Reilly said that Aist favored the plea.  *See id.* at 41-42, 44.   Reilly stated that Aist prevented

her from speaking with her brother on the day of trial by telling her she was not allowed in the

courtroom. *See id. at 41*.

Jerry Lee Buzzard testifed that Aist defended him on a car-jacking charge to which he

pleaded guilty. *See id.* at 63-66.  He testified that he met Aist only once prior to the day of  trial, and

that Aist advised him to take the plea when he told her he wanted a jury trial. *See id*. at 59-62.  He

testified Aist told him she had spoken to his family and they wanted him to take the plea.  *See id*.

at 63-66.  Buzzard testified that he valued his family's opinion and based on Aist's representations,

he entered a guilty plea.  *See id*.  Thomas Buzzard, brother of Jerry Lee Buzzard, testified the family

told Aist they wanted Jerry Lee Buzzard to reject the plea offer and go to trial. *See id*. at 72-75.

Jennifer Aist testified that she met with McCartney twenty-four times to discuss trial

strategy. *See id*. at 79, 101.   In addition to the murder charge, McCartney faced charges for unlawful

use of the victim's credit cards, and these charges carried a maximum exposure of ninety years

imprisonment.  *See id*. at 81-82.   Aist testified that she explained the maximum penalties to

McCartney. *See id.* at 102.   She testified that she never told him that he could get life without

parole. "Life without parole was never filed, it wasn't an issue." *Id.* at 102. Aist stated the plan was

to take McCartney's case to trial.  On the day of trial, however, a plea offer was presented whereby

McCartney could plead guilty to second degree murder in exchange for a thirty-year sentence, but

McCartney rejected the offer. *See id.*at 84-85. Aist testified that McCartney asked her to make a

counter-offer: he would plead to second degree murder with a maximum of thirty years with the

opportunity to argue for a lesser sentence.  *See id.*  The State accepted the terms of the counter-offer.

*See id.* at 86–90.

Aist testified that she had discussed the idea of a plea with Dorothea Reilly during their

telephone conversation on the eve of trial. *See id.* at 87-88.  Aist recalled that Reilly supported the

idea of a plea. *See id.*  Aist recalled that when she spoke to Reilly on the day of trial, Reilly said the

decision whether to plead or go to trial was McCartney's to make. *See id.* at 97-98.  Aist also

testified that Dorothea Reilly was not permitted in the courtroom on the day of trial because she was

sequestered as a potential witness.  *See id.* at 95-96.

After considering the evidence, the post-conviction court reviewed the applicable law, and

issued its decision from the bench, stating in part:

> It was stated in the case of *State v. Renshaw*, 276 Md. 259, "that the right to
> counsel is the right to effective assistance of counsel, the benchmark of which is
> whether counsel's advocacy was sufficient to maintain confidence of that adversarial
> process was capable of producing a just result."
>
> In the landmark case of *Strickland v. Washington*, 466 U.S. 668, in evaluating
> a claim for ineffective assistance of counsel the Supreme Court set forth a two-prong
> test in determining whether a defendant has been deprived of his Constitutional right
> to counsel by virtue of counsel's ineffectiveness.   The Petitioner must show (1) that
> counsel's performance was deficient and (2) that the alleged acts or omissions of
> counsel prejudiced the Petitioner's defense. As to the first prong, the Petitioner must
> show, "that the acts or omissions are the result of unreasonable professional

16

judgment and the counsel's performance, given all the circumstances, fell below an objective standard of reasonableness considering prevailing professional norms."

It was also stated by the Maryland Court of Appeals in the case of *State vs. Tichnell*, 306 Md. 428 at 441. In order to demonstrate prejudice the Petitioner, "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." The deficiency prong requires that the Petitioner bears the burden of (1) identifying the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment and (2) showing that counsel was functioning as the "counsel" guaranteed by the Sixth Amendment and (3) overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.

I have had occasion to listen carefully to the testimony of the witnesses, observe their demeanor and their manner of testifying. I have taken detailed notes during the testimony, which I have reviewed, and I find that Mr. McCartney is not credible and I accept witout reservation the testimony of Ms. Aist as being credible. Specifically Mr. McCartney has indicated in his testimony that Ms. Aist only interviewed him three times over a period of 20 months. As Ms. Aist testified that, indeed, she interviewed Mr. McCartney at the Detention Center 24 times and that she talked to the defendant about the case on numerous occasions.

Her office investigated the witnesses that Mr. McCartney wanted her to interview. And their criminal records, contrary to Mr. McCartney's testimony were checked by Ms. Aist's investigator. Ms. Aist had with her an extensive file relating to this case in which there was a folder from which Ms. Aist read the criminal history of Mrs. Dick and the other witnesses, or prospective witnesses. So I reject Mr. McCartney's testimony that Ms. Aist only met with him on several occasions and did not investigate the criminal background of the witnesses.

There was also testimony from Mr. McCartney that he informed Ms. Aist that he wanted to plead not guilty, that he rejected any plea agreement and then he wanted Ms. Aist to confer with Mrs. Reilly, Mr. McCartney's sister, because he valued her opinion. I accept Ms. Aist's testimony that she indeed did meet with or did speak several times with Mrs. Reilly, that she spoke by telephone with Mrs. Reilly a night or two before the sentencing or before the plea agreement was entered into and Mrs. Reilly initially was of the opinion that Mr. McCartney should accept the plea agreement, and then on the morning of trial indicated that she believed it was Mr. McCartney's decision to make and not hers and that Mr. McCartney would not listen to her. So I accept Ms. Aist's testimony in that regard and reject Mrs. Reilly's testimony and Mr. McCartney's testimony as being not credible.

I accept Ms. Aist's testimony that Mr. McCartney was advised of the

exposure that he had with regard to the numerous counts for credit card misuse, not to mention second degree murder or first degree murder, for which he was intially charged. That Ms. Aist acted effectively and provided effective assistance to Mr. McCartney in attempting to negotiate a plea bargain with the State in which the State initially sought a life sentence plus 45 years which was reduced shortly prior to trial to an *Alford* plea with Judge Bollinger binding himself to a maximum sentence of 30 years and that being changed to Ms. Aist being permitted to argue for a lesser sentence, which she did. It certainly does not constitute any violation of the prongs set forth in the *Strickland* case.

In this court's judgment Ms. Aist's performance was not deficient. It did not prejudice the defense and her acts in representing Mr. McCartney were not the result of an unreasonable professional judgment and did not fall below the professional norms. There's been no showing by the Petitioner that there was a reasonable probability that but for counsel's alleged unprofessional errors the result of the proceeding would have been different. Quite to the contrary, Ms. Aist and her office investigated the allegations made by Mr. McCartney that Mr. Dick and Tammy Dick had been involved in another murder....

Id at 117-121.

The decision of the post-conviction court is supported by the record. The state court considered the evidence presented, determined the credibility of witnesses, and applied its findings to relevant and appropriate case law under *Strickland* and its progeny. Having determined Ms. Aist's testimony credible, and that of Mr. McCartney and his witnesses not credible, the court concluded that McCartney had not met his burden to show ineffective assistance. McCartney had not shown Ms. Aist misrepresented his sentence exposure or his sister's opinion regarding entry of a plea. In short, the court rejected McCartney's proffered evidence that the plea was not entered knowingly, intelligently, and voluntarily.

There is no support for McCartney's claim that the post-conviction court incorrectly applied the standard of review. Whether to recommend that a client go to trial or enter a guilty plea bears on trial strategy. The ultimate decision, however, whether to plead guilty is a decision that must be made by the defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The state post-conviction

court found Ms. Aist professionally relayed the plea offer to her client and then returned to the state with his counter-offer which was accepted.  The state court's discussion of Ms. Aist's tactical decisions was in made in the context of representing her client, investigating potential witnesses, discussing pre-trial strategy, and negotiating the plea.  *See id.* at 120.  McCartney's claim that an improper standard of review was applied here tortures the  plain reading of the record

Lastly, McCartney faults the state post-conviction court for noting that Ms. Aist has on previous occasions represented her clients professionally, competently, and with integrity.  *See id.* at 121-122, 125.  The state court decision was clearly based on the testimony presented, as well as transcripts, and pleadings in the record.  Indeed, the post-conviction judge noted "I have no doubt based upon what I have heard and the exhibits that I have reviewed that  was done in this particular case."  *Id.* at 125.  The post-conviction court was able to judge the demeanor and credibility of the witnesses, and the resulting conclusions are supported by the record.  In light of the deference accorded to state court fact-finding on matters of credibility and the support in the record for these findings, there is no basis here to disturb the decision of the state court.   These claims provide no basis for habeas corpus relief.

For the above reasons, the court will dismiss and deny the 28 U.S.C. § 2254 motion for federal habeas corpus relief.  A separate order follows.


October 10, 2006                                         /s/_____
Date                                                            J. Frederick Motz
                                                                   United States District Judge